IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BARBARA COTTLE, ) | |
| ) | CASE NO. 4:14-CV-679 |
| Plaintiff, ) | |
| v. ) | |
| ) | MAGISTRATE JUDGE |
| ) | KENNETH S. McHARGH |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | **MEMORANDUM OPINION &** |
| ) | **ORDER** |
| Defendant. ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 14). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Barbara Cottle's ("Plaintiff" or "Cottle") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. PROCEDURAL HISTORY

Cottle protectively filed applications for Supplemental Security Income benefits and Disability Insurance benefits around June 14, 2010. (Tr. 12, 192-198). Plaintiff alleged she became disabled on April 22, 2010, due to suffering from memory loss caused by a brain aneurism, headaches, and high blood pressure. (Tr. 192, 223). The Social Security

Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 129-38, 144-53).

At Plaintiff's request, administrative law judge ("ALJ") Paula Goodrich convened an administrative hearing on October 25, 2012, to evaluate her applications. (Tr. 41-72).  Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*).  A vocational expert ("VE"), James Primm, also appeared and testified. (*Id.*).

On November 9, 2012, the ALJ issued an unfavorable decision, finding Cottle was not disabled. (Tr. 12-28).  After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id*.).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

Council. (Tr. 6). The Appeals Council denied the request for review, making the ALJ's November 9, 2012, determination the final decision of the Commissioner. (Tr. 1-4). Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since April 22, 2010, the alleged onset date.

3. The claimant has the following severe impairment: history of posterior cerebral artery ("PCA") aneurysm, status post ("s/p") July 2007 craniotomy and clipping.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)—including the exertional abilities to lift and/or carry (including upward pulling) up to 20 pounds occasionally and up to 10 pounds frequently, to push and/or pull (as in the operation of hand and/or foot controls) unlimited other than within those same weight limitations, and to sit, stand, and walk each within normal breaks and for a total of about 6 hours during the course of an 8-hour workday—except that she is further limited as follows:
   - Can never climb ladders, ropes, or scaffolds;
   - Can frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and
   - Should avoid all exposure to unprotected heights, hazardous machinery, and commercial driving.

6. The claimant is capable of performing past relevant work as an Advertising-Material Distributor. This work does not require the performance of work-related activities precluded by her residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 22, 2010, through the date of this decision.

(Tr. 16-28) (internal citations omitted).

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### V. ANALYSIS

Plaintiff raises only one allegation of error in the portion of her brief titled "Argument." She asserts that the ALJ improperly rejected one-time psychological examiner Donald Degli's, M.A., opinions regarding her mental limitations. Degli performed a psychological evaluation of Plaintiff on July 13, 2010. (Tr. 376-80). The psychologist described Cottle as "tremulous, sobbing, [and] tearful" throughout the assessment. (Tr. 376).

In the disability decision, the ALJ provided the following succinct summary of Degli's report:

> Mr. Degli described the claimant as "incoherent" and unable to remember simple information, a strong tendency to digress tearfully, and evidently apprehensive but more depressed than anxious. Basic cognitive testing was quite poor, as she gave incorrect responses to the day of the week, the month of the year, and the order of past Presidents, and she recalled just one of three objects after their display. While curtailed was formal memory testing on the memory scales, Mr. Degli noted that the claimant "barely" tolerated intelligence testing that resulted in full scale IQ of 60 within the mild mental retardation range and deemed the results "most likely represent[ing] a significant deterioration from a previous level of functioning" and giving "the picture . . . of dementia." That was considered a diagnostic of dementia, NOS, with the clinical examination also showing depression; a very low Global Assessment of Functioning ("GAF") score of 25 accompanied [this] diagnosis for both symptoms and functional impairment, and Mr. Degli assessed globally "marked" limitations across the claimant's work-related mental abilities.

(Tr. 22) (internal citations omitted).

The regulations provide that the ALJ is to evaluate every medical opinion in the record, and, unless giving a treating physician's opinion controlling weight, should explain the weight given to the opinion of medical sources while considering the factors set out in the regulations. 20 C.F.R. §§ 416.927(c), (e)(2)(ii) and 404.1527(c), (e)(2)(ii). These factors include examining

5

relationship, treatment relationship, length of treatment relationship and frequency of examination, supportability, consistency, and specialization. 20 C.F.R. §§ 416.927(c)(1)-(6) and 404.1527(c)(1)-(6). An ALJ is not bound by any findings made by any state agency program physicians or psychologists, including psychological consultants. 20 C.F.R. §§ 416.927(e)(2)(i) and 404.1527(e)(2)(i).

Nevertheless, if the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in the determination of the RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis."). Social Security Ruling 96-8p explains, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996).

In the present case, the ALJ evaluated Degli's opinion in accordance with the regulations and provided a thorough and well-reasoned explanation for the decision to discount the one-time examiner. The ALJ's explanation and observations are substantially supported by the record. Notably, Plaintiff provides no specific objection to any of the reasoning behind the ALJ's assessment of Degli's findings. Nor does she provide grounds for why the psychologist's report ought to have been adopted. Nevertheless, the Court will provide a review of the ALJ's analysis.

To begin, the ALJ found that Degli's opinion that Plaintiff suffered from severe mental impairments was inconsistent with and unsupported by multiple portions of the record. The ALJ noted that Cottle's memory problems or cognitive issues were "mild" in her postoperative

6

recovery from her July 2007 craniotomy and aneurism clipping surgery and not clinically evidenced in neurosurgeon Chander Kohli's, M.D., subsequent examinations. (Tr. 22, 354-56). Plaintiff's examinations in November 2011 and May 2012 with Urwa Barakat, M.D., were negative for any neurological deficits, lack of alertness, and disorientation. (Tr. 21, 438-45). The ALJ highlighted that treating physician James Toliver, M.D., consistently found Plaintiff had no psychological pathology and was well-oriented to person, time, and location. (Tr. 22, 371-72, 424-27). The multiple clinical observations Dr. Toliver made over the course of time stood in stark contrast to Degli's observations. (*Id.*). Additionally, despite the serious memory deficits Degli opined to, the ALJ noted that in emergency room visits, Cottle often was not reported as accompanied by another individual and was able to describe her medical symptoms without any indicated competency or memory deficits, abnormalities in speech or ability to engage in conversation, or any tearfulness or disturbance of mood or affect. (Tr. 22, 387-422, 449-512). Furthermore, the ALJ observed that despite Plaintiff's long history of medical treatment for multiple ailments, medical records were absent of signs of dementia or severe depression as Degli diagnosed. (Tr. 22). Aside from reports of counselor Jim McGaha, which the ALJ gave good reasons for rejecting, the Court is unaware of, and Plaintiff fails to point to, any medical records that would bolster Degli's diagnoses.

      The ALJ went on to explain that Degli's report contained notable internal discrepancies with Plaintiff's presentation, which the examiner did not properly address or evaluate. (Tr. 23). For instance, despite Degli finding marked impairments in all work-related mental abilities, the ALJ noted that there was no clinical evidence of a thought disorder. (*Id.*). Moreover, Degli reported that Cottle "surprisingly" agreed when asked if she was happy, though Degli did not

7

reconcile this statement with his diagnosis or extremely low GAF score.[2] (Tr. 23, 277). Degli also did not explain his observation that Cottle was "most interestingly . . . well aware" of her diminished personal, social, and cognitive functioning, despite his opinion that she suffered from severe mental health conditions. (Tr. 23, 378). In addition, Degli failed to confront Plaintiff's report of being able to drive short and familiar distances while suffering from severe dementia. (*Id.*).

The ALJ also pointed out that Cottle made inconsistent statements during her evaluation with Degli that were not attributable to her alleged memory deficits. (Tr. 23). Specifically, the ALJ observed that during the July 2010 evaluation, Plaintiff told Degli that she had been "separated" from her former husband, Ernest Cottle, for two years. (Tr. 23, 379). However, in March 2011, Mr. Cottle reported to the Cooperative Disability Investigations Unit that the couple was still married and living together. (Tr. 23, 265). Medical treatment notes from March 2010 and April 2012 similarly indicate that Plaintiff reported she and Mr. Cottle remained married. (Tr. 23, 395, 442).

Finally, the ALJ observed that Degli had the opportunity to examine Plaintiff on only one occasion, making his opinion entitled to less deference. (Tr. 24-25). The ALJ observed that Degli had no other contextual evidence or medical records before him and depended on Plaintiff's presentations and subjective reports to formulate his opinion. (*Id.*). The ALJ found that Cottle was not credible in her reports regarding her health, a finding that Cottle does not now contest. (Tr. 20).

---

[2] A GAF score "is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006) (*quoting* DSM-IV-TR at 34) (internal notations omitted). A GAF score between 21 and 30 represents behavior that is considerably influenced by delusions or hallucinations, serious impairment in communication or judgment, or inability to function in almost all areas.

8

Cottle argues that by rejecting Degli's conclusions, the ALJ substituted her medical judgment for that of the psychologist. It is true that an ALJ may not substitute her own medical judgment for that of a physician, where the physician's opinion is supported by medical evidence. *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (*quoting Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)). Yet, the ALJ reserves the right to decide certain pertinent issues, such as the claimant's credibility, residual functional capacity, and employability. Furthermore, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (internal citations omitted).

Here, the ALJ did not improperly supplant Degli's opinion when rejecting the psychologist's findings. Rather the ALJ pointed to multiple pieces of medical evidence from the record that seriously called into question the accuracy of Degli's opinion as to Plaintiff's mental impairments. The ALJ more than adequately justified the decision to discount the one-time examiner's opinion and the ALJ's conclusion is substantially supported by evidence in the record, rather than the ALJ's own medical judgment.

The Court notes that under the portion of her brief titled "Legal Issues," Plaintiff sets out a number of issues, which she represents were submitted to the Appeals Counsel as part of her request for review. However, Cottle does not raise these issues again in the "Argument" portion of her brief nor does she provide any substantive analysis of them. It is not the Court's duty to develop arguments for Plaintiff. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.' ") (*quoting*

9

*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).  As a result, the Court will not address these issues, which appear to be a mere recitation by Plaintiff of the procedural history of her case.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  June 25, 2015.